IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Bryant Heyward, | ) |
| --- | --- |
| Plaintiff, | ) No. 2:17-01545-DCN |
| vs. | ) ORDER |
| Keith Tyner, Richard Powell, Eric Watson, Mitch Lucas, and Al Cannon, *Individually and in their Official Capacities*; Charleston County Sheriff's Office; Charleston County Consolidated 911 Center, | ) |
| Defendants. | ) |

This matter is before the court on Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R&R"), ECF No. 17, that the court grant in part, deny in part, and find to be moot in part defendants' Keith Tyner ("Tyner"), Richard Powell ("Powell"), Eric Watson ("Watson"), Mitch Lucas ("Lucas"), Al Cannon ("Cannon"), and Charleston County Sherriff's Office's ("CCSO") (collectively, "moving defendants") partial motion to dismiss, ECF No. 5. For the reasons set forth below, the court fully adopts the R&R.

## I. BACKGROUND

Because the R&R ably recites the relevant facts of the case, the court summarizes the key portions of the complaint that relate to this motion to dismiss. Bryant Heyward ("Heyward"), an African-American male, alleges that armed men burglarized his home in Hollywood, South Carolina on May 5, 2015. ECF No. 1, ¶¶ 14–15. After the armed men fired gun shots into Heyward's home, he retrieved his brother's gun and returned fire. Id. Heyward claims that he called 911 and told the

1

operator about the incident, informing the operator that he was hiding in his laundry room in the rear of the home and was armed with a weapon. Id. at ¶¶ 16, 18–19.

Tyner and Powell responded to the 911 call and arrived at Heyward's home. Id. at ¶ 23. They entered through the partially open back door of Heyward's residence, where Heyward was hiding in his laundry room. Id. at ¶ 24. Heyward claims that within one second of first seeing Heyward, Tyner shot him while simultaneously yelling "show me your hands." Id. Heyward was shot in the neck and fell to the ground. Id. After shooting Heyward, Tyner and Powell allegedly dragged Heyward out of the laundry room, causing further damage to his spinal cord and lacerations to his back requiring stitches. Id. at ¶ 26. They later realized that Heyward was not an intruder, but rather the homeowner who had called 911. Id. at ¶ 27. Heyward was placed into an ambulance with a CCSO detective who recorded an interview with him while paramedics rendered him care. Id. at ¶¶ 28–29. As a result of the gun shot, Heyward is now a quadriplegic. Id. at ¶ 14.

One month prior to the incident, Walter Scott, an African-American male, was shot and killed by police officer Michael Slager in North Charleston. Id. at ¶ 30. Heyward alleges that the increasingly high tensions between law enforcement and the North Charleston community this incident led moving defendants to attempt to quell the unrest that would result from Heyward's shooting. Id. Heyward claims that moving defendants sought to change the narrative of the events surrounding the shooting by portraying Heyward as a threat who disregarded the police officer's instructions, did not drop his weapon when commanded, and was accidentally shot. Id. at ¶ 31. Heyward further alleges that, in an attempt to support this narrative,

moving defendants intentionally filed and released various false reports both internally and to the public, and purposefully made false statements regarding the events surrounding the shooting. Id. at ¶¶ 34, 36, 38–39, 41.

Heyward filed this suit on May 4, 2017 in the Charleston County Court of Common Pleas, and defendants removed it on June 13, 2017. Heyward brings the following causes of action: (1) gross negligence against Rivers, individually and in her official capacity; (2) gross negligence against Charleston County Consolidated 911 Center ("CCCC") and Lake, individually and in his official capacity; (3) gross negligence against CCSO and Lucas and Cannon, individually and in their official capacities; (4) negligent hiring, supervision, retention against CCSO and CCCC; (5) battery against Tyner and Powell, individually and in their official capacities; (6) assault against Tyner, individually and in his official capacity; (7) 42 U.S.C. § 1983 claim for violation of Heyward's civil rights under the Fourth and Eighth Amendments of the United States Constitution by Tyner and Powell, individually and in their official capacities; (8) 42 U.S.C. § 1983 claim for violation of Heyward's civil rights under the Second Amendment of the United States Constitution by Tyner and Powell, individually and in their official capacities; (9) 42 U.S.C. § 1985 claim for civil conspiracy as to CCSO and Tyner, Powell, Watson, Lucas, and Cannon, individually and in their official capacities. Id. ¶¶ 46–107.

On July 3, 2017, moving defendants filed a partial motion to dismiss, claiming that: Cannon and Lucas are entitled to dismissal from Heyward's gross negligence claim; CCSO and Tyner, Powell, Watson, Lucas, and Cannon, are entitled to have the § 1983 claims brought against them in their official capacities dismissed, based on

3

Eleventh Amendment immunity; and Heyward's § 1983 Second and Eighth Amendment claims, as well as his § 1985 civil conspiracy claim, should be dismissed for failure to state a claim upon which relief may be granted. ECF No. 5 at 1. After full briefing on the motion,[1] Judge Baker issued an R&R on November 29, 2017, recommending that the court grant in part, deny in part, and find to be moot in part moving defendants' motion to dismiss. Judge Baker concluded that: (1) moving defendants are immune from any § 1983 claims brought against them in their official capacities;[2] (2) Heyward should not obtain punitive damages against moving defendants for claims brought against them in their official capacities under § 1983; (3) the § 1983 Second Amendment claim against Tyner and Powell should be dismissed for failure to state a claim; and (4) moving defendants' motion to dismiss the conspiracy claim should be denied. Moving defendants filed their objections to the R&R on December 13, 2017, and Heyward filed his reply on January 26, 2018. The motion has been fully briefed and is now ripe for the court's review.

---

[1] In his response, Heyward agreed to dismiss his gross negligence claim against Cannon and Lucas, part of hist third cause of action. ECF No. 9 at 3. He also agreed to dismiss his Eighth Amendment claims against Tyner and Powell in the seventh cause of action. Id. at 9. Heyward further stated that he does not allege any liability based on respondeat superior in his federal causes of action. Id. at 13. Thus the R&R addressed only the remaining issues raised by the motion to dismiss.

[2] The court adopts the R&R in full, finding that the § 1983 claims brought against moving defendants in their official capacities should be dismissed. However, the motion to dismiss says nothing about dismissing these claims against any defendants in their individual capacities. For the sake of clarity, the court specifies that Heyward's claims against the defendants in their individual capacities still stand, excluding those claims that the court has dismissed on other grounds.

## II. STANDARD

### A. De Novo Review

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. 636(b)(1). The court may adopt the portions of the R&R to which the petitioner did not object, as a party's failure to object is accepted as agreement with the conclusions of the magistrate judge. Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and it is this court's responsibility to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

### B. Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-

pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Heyward has filed no objections to the R&R. Moving defendants object only to the R&R's recommendation that this court deny their motion to dismiss Heyward's ninth cause of action for 42 U.S.C. § 1985 civil conspiracy. The court has reviewed the portions of the R&R to which no objections have been filed and adopts those portions. The court denies moving defendants' objection and adopts the R&R in full.

**A.  Civil Conspiracy Claim Factors**

Under 42 U.S.C. § 1985(3), a plaintiff may bring a civil conspiracy claim alleging a civil rights violation. A successful § 1985 claim for conspiracy to deny a citizen equal protection of the law requires proving:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). A claimant must also show an agreement or a "meeting of the minds" by defendants to violate the claimant's

constitutional rights. Id.; see also Lenard v. Argento, 699 F.2d 874, 882–83 (7th Cir. 1983), cert. denied, 464 U.S. 815 (1983) ("A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another . . . .") (internal quotation marks omitted). Suits alleging a conspiracy under § 1985 must plead specific facts in a nonconclusory fashion to survive a motion to dismiss. Gooden v. Howard, 954 F.2d 960, 969–70 (4th Cir. 1992).

Heyward has alleged sufficient facts to survive a motion to dismiss with respect to his § 1985 claim. Moving defendants have conceded that Heyward satisfied the first element, a conspiracy involving two or more persons, and the third element, the deprivation of the right to equal protection. ECF No. 5-1 at 10 ("Plaintiff has pled a conspiracy of two or more persons that deprived him of equal protection."). The court finds that Heyward has also satisfied the remaining elements required to survive moving defendants' motion to dismiss. Regarding the second element—specific class-based, invidiously discriminatory animus—Heyward has sufficiently alleged enough facts from which a jury could determine that moving defendants' actions were motivated by some discriminatory animus. Specifically, Heyward claims that following the shooting of Walter Scott, an unarmed African-American man, by Michael Slager, a while police officer, a month prior to this alleged incident, the tension between law enforcement and the North Charleston community was rising. Heyward has alleged that moving defendants were concerned about the public perception of the police officers in the community after another

7

African-American male was shot by the police, and that this concern about further public backlash against law enforcement led moving defendants to make it appear as though they rightly perceived Heyward as a threat during the encounter. Heyward also claims that the officers involved filed false police reports and purposefully made various false statements to the public about the incident to further this false narrative.

Considering the fourth factor—injury to the plaintiff—the court finds that Heyward has sufficiently alleged that he suffered injuries caused by moving defendants' conspiracy. Heyward claims that after Tyner entered through the back door and shot him, Heyward informed Tyner and Powell that the residence belonged to him and that they had the wrong man. Id. ¶ 24. Heyward alleges that Tyner and Powell then hung up Heyward's phone and, rather than providing aid to him where he lay or waiting for EMS to arrive, dragged him out of the laundry room, further damaging his spinal cord and causing severe lacerations to his back. Id. ¶ 26. It is reasonable for the court to infer that Tyner and Powell moved Heyward's body out of the laundry room to support the narrative that they and CCSO would later announce to the public—that Tyner and Powell were "confronted by an armed subject exiting or standing at the back door of the residence." Id. ¶ 36. It is plausible that the lacerations to his back and the further damage to his spinal cord were caused by Tyner and Powell's conspiracy to support this narrative. Tyner and Powell then allegedly made false statements about the event, claiming that when they arrived at Heyward's home the back door swung open and Heyward exited the back door pointing a handgun at them, and that only after Tyner commanded Heyward to drop the gun did Tyner shoot Heyward to "suppress the threat." Id. ¶¶ 38–40. Heyward

claims that Tyner and Powell reported that Heyward went back inside and closed the back door after he was shot.  Id.  Watson, Lucas, and Cannon allegedly joined this conspiracy when they made several allegedly false statements about the incident to the public, in an effort to support Powell and Tyner's false reports.  Id. ¶¶ 37–41.  Heyward claims that the moving defendants' actions following the shooting caused him irreparable mental and emotional harm, in addition to the physical harm caused by Tyner and Powell's actions.  Id. at ¶ 42.  Finally, Tyner and Powell's alleged actions following the shooting and the false statements made by Watson, Lucas, Cannon, and the CCSO constitute "overt acts" in satisfactions of the fifth factor.

Additionally, Heyward has alleged sufficient facts from which a jury could conclude that there was a "meeting of the minds" among moving defendants to conspire to violate Heyward's constitutional right to equal protection under the law.  Heyward alleges that after wrongly shooting him, Tyner and Powell conspired with Watson, Lucas, Cannon, and CCSO to "purposefully make misleading and inaccurate statements to the public regarding the true nature of" the shooting, largely because of Heyward's race and their fear of the public backlash surrounding another shooting of an African-American man by a white police officer in Charleston.  ECF No. 1-1 at ¶¶ 32–35 ("Specifically, Defendant Watson intentionally and falsely stated that . . . Plaintiff 'confronted' the deputies . . . .").  Heyward further claims that Watson also falsely stated on multiple occasions that Heyward disobeyed Tyner and Powell's order to drop his weapon, while audio from the officers' body microphones demonstrates that they in fact never ordered him to drop his weapon.  Id. ¶ 35.  Further, Heyward's complaint alleges that Tyner made false statements in CCSO

reports about the incident—that Heyward exited the back door pointing a handgun at Tyner and Power, which constituted adequate provocation for Tyner to fire at Heyward. Id. ¶ 40.  Heyward's allegations about the consistently false and misleading actions by moving defendants—from filing inaccurate and self-serving police reports to making similar public statements promoting a false narrative of the incident—provide a sufficient basis from which a jury could determine that there was a "meeting of the minds" among moving defendants to violate Heyward's right to equal protection under the laws.

"[I]n light of the lenient pleading standard [under Rule 12(b)(6)]," Johnson v. City of Fayetteville, 91 F. Supp. 3d 775, 796 (E.D.N.C. 2015),  Heyward's allegations are sufficient to survive a Rule 12(b)(6) motion as to the civil conspiracy claim under § 1985.

**B.     Intracorporate Conspiracy Doctrine**

Moving defendants have raised the intracorporate conspiracy doctrine as a defense to Heyward's conspiracy claim.  This court finds that the defense does not apply in the current case.

Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017); see Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 352 (4th Cir. 2013) ("The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with its agents because the agents' acts are the corporation's own."), Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985) (finding that the doctrine can apply to civil rights

10

claims under §§ 1983 and 1985(3)). The Fourth Circuit has adopted an exception to this doctrine "where the plaintiff has alleged that the corporate employees were dominated by personal motives or where their actions exceeded the bounds of their authority." Buschi, 775 F.2d at 1252; see Greenville Pub. Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir. 1974) ("We agree with the general rule [that a corporation cannot be guilty of conspiring with its officers or agents] but think an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective."), Liverett v. Island Breeze Int'l, Inc., 2012 WL 3264563, at *1 (D.S.C. Aug. 9, 2012) (dismissing plaintiff's civil conspiracy cause of action because plaintiff "failed to allege facts that [defendants] acted outside of their normal corporate duties or had any independent stake in achieving the objective of the alleged conspiracy").

In Greenville Pub. Co., the Fourth Circuit overturned a district court's granting of summary judgment to the defendants based on the intracorporate conspiracy doctrine. The plaintiff in this antitrust suit alleged that local publisher The Daily Reflector, through its president David Whichard, conspired with the corporation and other publishing companies to set low publishing prices in violation of the Sherman Act. Greenville Pub. Co., 496 F.2d at 399. The district court applied the intracoprorate conspiracy doctrine to find that the defendants could not be guilty of conspiracy. Id. The Fourth Circuit overturned this holding based on facts before the court from which "it [was] reasonable to infer that Whichard could benefit personally from the elimination of" the competing publishing company. Id. at 400.

Here, Heyward has alleged sufficient facts from which the court may reasonably infer that the individually named moving defendants could benefit personally from intentionally filing false reports and making false statements to the public. ECF No. 1 ¶¶ 34, 36, 38–39, 41. From the facts in front of the court, the court finds it plausible that Tyner and Powell could have had an incentive to claim that Heyward failed to follow their orders to drop his weapon and that he charged at them with a gun pointed at them before Tyner shot him. If Tyner and Power could convince their superiors and the public that reasonably perceived Heyward as a threat based on these actions, they could more easily argue that Tyner acted appropriately in shooting him. If Watson, Lucas, and Cannon knew that the incident did not in fact occur this way yet made the false public statements, it is reasonable to infer that they could benefit from making those false statements by protecting one of their fellow law enforcement officers and avoiding further scrutiny on themselves and police officers in the wake of the rising tensions alleged by Heyward. Additionally, filing false reports and making false public statements would clearly exceed the bounds of moving defendants' authority as officers of CCSO, another reason this case falls under the doctrine's exception.

While this circuit does not appear to have addressed the intracorporate conspiracy doctrine in a case with unique facts such as this, the District Court for the District of Columbia has analyzed a similar factual scenario. In <u>Blakeney v. O'Donnell</u>, 117 F. Supp. 3d 6, 16 (D.D.C. 2015), the court carved out another exception to the intracorporate conspiracy doctrine. <u>Blakeney</u> involved police officers assaulting the plaintiff and subsequently filing false police reports and

making false statements about their actions. Id. The Blakeney court concluded the intracorporate conspiracy defense did not apply where the underlying alleged scheme involved conduct that was outside the scope of employment and arguably criminal. Id. This court finds Blakeney instructive and applies its reasoning here. Heyward sufficiently alleges that Powell and Tyner purposefully filed false police reports regarding the shooting in order to make Heyward appear as if he were a threat and that the other moving defendants made false statements to substantiate this narrative. Id. at ¶¶ 38–39, 41. Therefore, the court declines to apply the intracorporate conspiracy doctrine and refrains from dismissing Heyward's conspiracy claim.

## IV.   CONCLUSION

For the foregoing reasons, the court fully **ADOPTS** the R&R.

**AND IT IS SO ORDERED**.

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**March 20, 2018**
**Charleston, South Carolina**